UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAPE M. DIEDHIOU,<br><br>       *Plaintiff*<br><br> v.<br><br>THE REPUBLIC OF SENEGAL AND TERANGA, LLC<br><br>       *Defendants* | Civil Action No. 1:20-CV-20-5685<br><br>**COMPLAINT** |

Pape M. Diedhiou ("Diedhiou" or "Plaintiff"), by and through counsel, THOMPSON & SKRABANEK, PLLC, brings this Complaint against The Republic of Senegal ("Senegal") and Teranga, LLC ("Teranga") (collectively, "Defendants"), and in support thereof would show:

## NATURE OF THE CASE

1. This is an action for damages in excess of $1,000,000 for, *inter alia*, breach of contract, account stated, and *quantum meruit*.

2. Plaintiff performed a number of valuable services worth millions of dollars to Defendants for years. Defendants knowingly accepted the benefits of the services, sought more services from Plaintiff, and repeatedly promised to pay, but have ultimately failed to ever compensate Plaintiff for his hard work and dedication.

3. As further detailed herein, Senegal hand-picked Plaintiff to scout, locate, negotiate for, bid on, close, manage, pay taxes on, obtain permits for, provide architectural renderings for, and deliver other valuable services to real property near the United Nations in New York City, all for Defendants' exclusive benefit.

4. Ultimately, over a period of years, Plaintiff assisted Senegal with building a

valuable commercial building in Midtown Manhattan, but Senegal has never paid Plaintiff a single dollar.

## SENEGAL IS NOT IMMUNE FROM SUIT

5. As further detailed below, Senegal is not immune from the claims herein pursuant to 28 U.S.C. § 1605(a)(2). More specifically, all of the acts giving rise to Plaintiff's claims against Senegal arise from Senegal's commercial activities carried on in the United States.

## JURISDICTION & VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1330 because Senegal is a foreign state as defined in 28 U.S.C. § 1603(a).

7. Supplemental jurisdiction over all claims that form part of the same case or controversy is invoked pursuant to 28 U.S.C. § 1367.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

9. Plaintiff is a United States citizen residing in New York, New York.

10. Senegal is a sovereign foreign nation subject to the jurisdiction of this Court.

11. Teranga is a New York limited liability company.

## FACTS

### A. Plaintiff's Background.

12. Diedhiou was born and raised in Senegal.

13. In 1989, Diedhiou legally immigrated to the United States, where he has resided ever since.

14. Diedhiou is a New York City-based architect. Diedhiou received a Bachelor of Science and Bachelor of Architecture degrees from the City College of New York. Diedhiou is also an active, registered member of Senegal's Board of Architects.

### B. Plaintiff's Relationship to Defendants.

15. In or around 2007, Senegal's former Ambassador and Permanent Representative to the United Nations, Paul Badji ("Badji"), by and on behalf of Senegal, along with Pierre Goudiaby ("Goudiaby"), who is Diedhiou's uncle and a prominent architect in Senegal, approached Diedhiou seeking his assistance with the location and long-term development of a commercial real estate project in New York City.

16. The project was by and for Senegal's commercial benefit.

17. Badji and Goudiaby first tasked Diedhiou with locating property suitable for development, to which Diedhiou agreed to assist.

18. Badji and Goudiaby explained that Diedhiou would later serve as a steward to the property while it underwent various stages of development, to which Diedhiou also agreed to assist.

19. All of the services sought of Diedhiou described herein were known to and approved at the highest levels of Senegal's governing bodies, including the Presidency.

20. All of the individuals affiliated with Senegal who are referenced herein were knowingly acting as agents of Senegal.

### C. Plaintiff Locates a Suitable Property and the Parties Form Teranga.

21. Diedhiou worked with Badji and other members of the Senegalese government for many months to find a property suitable for Senegal's development goals. A true and correct copy of the formal written authorization by Badji for Diedhiou to serve as Senegal's representative for

these purposes, dated November 10, 2007, is attached hereto as <u>Exhibit A</u>.

22. Eventually, the parties settled on the property located at 227-235 E. 44th Street, New York, New York 10017 and legally described as Block 1318, Lots 15 and 17, Borough of Manhattan (the "Property").

23. In or around June 2008, Senegal formed Teranga for the express purpose of purchasing and developing the Property in its initial phases.

24. Senegal is the sole Member of Teranga.

25. With Badji and Senegal's explicit permission, Diedhiou is the sole Manager of Teranga and, upon information and belief, remains so to this day.

26. Badji also executed a valid and binding Durable General Power of Attorney to allow Diedhiou—as Teranga's Manager—to purchase the Property by and for Teranga.

27. Senegal retained a prominent law firm to assist Diedhiou and Teranga with the necessary transactions to effectuate the purchase of the Property.

28. At Badji, Goudiaby, and Senegal's explicit request, Teranga purchased the Property with Diedhiou and the law firm's assistance. The sale closed in or around November 2009. The purchase price was $24,375,000.

### D. Plaintiff Continues to Serve the Property at Senegal's Request.

29. Thereafter, from between roughly 2008 through late 2014, Diedhiou continued to serve as a steward to the Property at Senegal's repeated and explicit requests.

30. More specifically, Senegal, by and through numerous agents, requested and received various services from Diedhiou. These agents include former President Abdoulaye Wade, former First Lady Viviane Wade, former Minister of Energy Samuel Sarr, Minister of Budget Birama Mangara, Minister of Foreign Affairs Alioune Badara Cisse, Special Advisor to the President Pape

Sene, Badji, and Goudiaby.

31. Diedhiou provided services including:

- Payment of taxes on the Property;
- Minimizing regulatory carrying costs for the Property;
- Management and payment of any violations incurred during development of the Property;
- Assisting with construction permitting at various stages of developing the Property;
- Assisting with managing and procuring necessary environmental studies for developing the Property;
- Assisting with managing and procuring a geotechnical report for developing the Property;
- Designing the interiors of the building and providing other architectural services to the Property; and
- Assisting with transferring ownership of the Property to other entities affiliated with Senegal in later stages of development.

32. Generally, Diedhiou gladly obliged all of the requests for assistance to the Property.

33. By way of example of Diedhiou's assistance, attached hereto as <u>Exhibit B</u> is a true and correct copy of architectural renderings developed and delivered by Diedhiou in 2010 to various Senegalese officials as part of the development process.

34. Many of the aforementioned requests for service were made in face-to-face meetings between Diedhiou and Senegal's agents that occurred at different times in Dakar, Paris, and New York City.

35. All of the aforementioned services occurred on an ongoing basis between 2008 and late 2014.

36. At numerous times during these many years of service, Plaintiff was repeatedly assured by numerous Senegalese officials that he would be well-compensated for his dedication and services to the Property and to Senegal, and also reimbursed for his out-of-pocked expenses.

   **E. Plaintiff Incurs Substantial Out-of-Pocket Expenses.**

37. Diedhiou incurred substantial out-of-pocket expenses on behalf of Senegal and the Property.

38. Such expenses include the following:

- Liability insurance for the Property for two (2) years;
- Recording fees;
- Legal fees;
- Travel expenses;
- Feasibility and environmental study fees; and
- Other miscellaneous expenses.

39. In sum, these expenses total at least $128,650.

40. The expenses were incurred on an ongoing basis between 2008 and late 2014.

41. Teranga's operating agreement requires Diedhiou to be reimbursed for all of his out-of-pocket expenses without exception.

42. Upon information and belief, Teranga has never been properly wound up according to New York law.

43. None of Diedhiou's expenses have ever been reimbursed despite repeated demand.

### F. Plaintiff's Services Cease and Senegal Asks for a Bill.

44. Diedhiou continued to provide the aforementioned services to the Property through approximately December of 2014.

45. At a meeting between Diedhiou and Pape Sene ("Sene"), Special Advisor to President Macky Sall, in December 2014, at which Diedhiou delivered substantial work product, Sene again assured Diedhiou he would be paid for his services.

46. Thereafter, various Senegalese officials requested a formal invoice from Diedhiou.

47. In or around May 2016, Diedhiou sent an invoice to Fodé Seck ("Seck"), who had replaced Badji's successor as Senegal's Ambassador and Permanent Representative to the United

Nations.

48. The invoice was for approximately $2,438,650 for all services rendered to the Property and all of Diedhiou's out-of-pocket expenses.

### G. Senegal Refuses to Pay.

49. In or around August 2016, Seck wrote to Diedhiou and directed him to seek payment directly from Goudiaby.

50. Seck—with full knowledge of the contents and amount of the invoice—did not complain about the quality of any of the services rendered. Instead, Seck merely directed Diedhiou to seek payment from a different source. A true and correct copy of Seck's August 10, 2016 letter to Diedhiou is attached hereto as Exhibit C.

51. Seck's refusal to pay the bill was improper for at least the following reasons:

- Diedhiou never had a contract with Goudiaby or provided services to Goudiaby but instead provided his services directly to Senegal;
- Diedhiou was not a subcontractor to Goudiaby and Goudiaby was not a general contractor to the Property;
- Goudiaby was never Diedhiou's employer; and
- Goudiaby's services to the Property were generally dwarfed by Diedhiou's.

52. Since August 2016, Diedhiou has repeatedly requested payment and patiently waited, though payment has never been forthcoming.

53. The development work on the Property continued for years, and eventually, Senegal successfully erected a commercial building on the Property worth many millions of dollars for its own exclusive benefit.

### FIRST CLAIM FOR RELIEF[1]
*Breach of Contract Against Senegal*

---

[1] Plaintiff incorporates by reference the preceding paragraphs for all causes of action pleaded herein.

54. Senegal hired Plaintiff to perform certain valuable services.

55. Plaintiff provided such services in the sum of at least $2,438,650.

56. Senegal accepted the services and became bound to pay for their reasonable value.

57. Senegal thus contracted and agreed to pay Plaintiff the sum of $2,438,650.

58. Senegal defaulted in failing to pay and is thus liable to Plaintiff in the amount of $2,438,650, plus interest.

### SECOND CLAIM FOR RELIEF
*Account Stated Against Senegal*

59. Diedhiou's invoice to Senegal for $2,438,650 constitutes a statement of account.

60. The invoice was presented to Senegal as detailed herein.

61. Senegal did not timely dispute or object to the invoice nor any of the services Plaintiff provided.

62. Plaintiff has thus established an account stated, and Senegal is liable to Plaintiff for $2,438,650, plus interest.

### THIRD CLAIM FOR RELIEF
*Quantum Meruit Against All Defendants*

63. Plaintiff performed services to Defendants in good faith.

64. Senegal and Teranga's failure to compensate Plaintiff for any of his services has unjustly enriched them at Plaintiff's expense.

65. Defendants knowingly accepted the services and continually asked for more services to be rendered.

66. Plaintiff expected to be compensated for the services, and Defendants knew Plaintiff expected to be compensated.

67. Defendants are thus liable to Plaintiff for the reasonable value of the services in the

amount of at least $2,438,650, plus interest.

## FOURTH CLAIM FOR RELIEF
*Unjust Enrichment Against All Defendants*

68. Plaintiff rendered performance of the services for Defendants' mutual benefit.

69. Failure to compensate Plaintiff for the fair value of the services would unjustly enrich Defendants.

## FIFTH CLAIM FOR RELIEF
*Promissory Estoppel Against All Defendants*

70. Defendants made a clear and unambiguous promise to Plaintiff that they would pay for his services.

71. Plaintiff reasonably and foreseeably relied on the promises of payment to his detriment.

72. Plaintiff has been injured in reliance on the promises.

73. Defendants are, therefore, estopped from asserting they have no obligation to pay.

## SIXTH CLAIM FOR RELIEF
*Breach of Written Contract Against Teranga*

74. Teranga's operating agreement is valid and binding.

75. Article 6.1(c) of the operating agreement requires Diedhiou to be reimbursed for all of his out-of-pocket expenses without exception.

76. Teranga has breached the operating agreement by failing to reimburse Diedhiou for all of his out-of-pocket expenses.

77. Diedhiou has suffered damages of at least $128,650 in unreimbursed out-of-pocket expenses.

## DEMAND FOR JURY TRIAL

78.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury in this matter.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants, jointly and severally, as follows:

a.      At least $2,438,650 in actual, compensatory damages;

b.      Plaintiff's reasonable attorney's fees and litigation costs;

c.      Pre-judgment and post-judgment interest as provided by law; and

d.      Such other relief to which Plaintiff is justly entitled.

Dated: July 23, 2020
       New York, New York

                                        Respectfully submitted,

                                        THOMPSON & SKRABANEK, PLLC

                                        By: _____
                                            J.R. Skrabanek, Esq.
                                            42 W. 38th Street, Suite 1002
                                            New York, NY 10018
                                            Tel: (646) 568-4280
                                            jrs@ts-firm.com

                                        ATTORNEYS FOR PLAINTIFF