UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAPE M. DIEDHIOU,

                Plaintiff,

– against –

THE REPUBLIC OF SENEGAL, and
TERANGA, LLC,

                Defendants.

**OPINION & ORDER**

20 Civ. 5685 (ER)

Ramos, D.J.:

Pape Diedhiou, a Senegal-born United States citizen and architect residing in New York City, has brought this action against the Republic of Senegal and Teranga, LLC (collectively, "Defendants"), to recover damages for breach of contract and quasi-contract claims. Senegal[1] now moves to dismiss the complaint on the bases that Diedhiou's claims are barred by the statute of frauds, that he fails to allege an account stated claim, and that the quasi-contract claims cannot stand because Diedhiou alleges that he had a contract with the Republic of Senegal. Senegal's Motion to Dismiss is GRANTED in part and DENIED in part.

I. **BACKGROUND**

    a. **Factual Background**[2]

Diedhiou alleges that he provided various services to Senegal through a series of oral agreements beginning in 2007 and continuing until late 2014. Compl. ¶¶ 21, 29, 30. In approximately 2007, Paul Badji, Senegal's former Ambassador and Permanent Representative to the United Nations, and Pierre Goudiaby, who is Plaintiff's uncle and a prominent architect in

---

[1] Teranga, LLC has not appeared in this action.

[2] All facts are taken from the Complaint, Doc. 1, and are assumed to be true for the purposes of this motion.

Senegal, sought Diedhiou's assistance with "the location and long-term development of a commercial real estate project in New York City." *Id.* ¶ 15. Badji and Goudiaby requested Diedhiou's services on behalf of Senegal. *Id.* Initially, Badji and Goudiaby asked Diedhiou to locate property suitable for development, and he agreed to do so. *Id.* ¶ 17. In approximately June 2008, Senegal formed Teranga, LLC, for the express purpose of purchasing and developing the property. *Id.* ¶ 23. Badji gave explicit permission for Diedhiou to serve as the sole Manager of Teranga, and Badji also executed a valid and binding Durable General Power of Attorney to allow Diedhiou to purchase the property for Teranga. *Id.* ¶¶ 25–26. At Badji and Goudiaby's explicit request, Diedhiou purchased the property on behalf of Teranga, with the sale closing in approximately November 2009. *Id.* ¶ 28.

After the purchase of the property, until approximately late 2014, Diedhiou continued to provide various services that were requested on Senegal's behalf. These requests were made by various agents of Senegal, including former President Abdoulaye Wade, former First Lady Viviane Wade, former Minister of Energy Samuel Sarr, Minister of Budget Birama Mangara, Minister of Foreign Affairs Alioune Badara Cisse, Special Advisor to the President Pape Sene, Badji, and Goudiaby. *Id.* ¶ 30. The services provided by Diedhiou included:

- payment of taxes on the property;
- minimizing regulatory carrying costs for the property;
- management and payment of any violations incurred during development of the property;
- assisting with construction permits at various stages of developing the property;
- assisting with managing and procuring necessary environmental studies for developing the property;
- assisting with managing and procuring a geotechnical report for developing the property;

- designing the interiors of the building and providing other architectural services to the property; and

- assisting with transferring ownership of the property to other entities affiliated with Senegal in later stages of development.

*Id.* ¶ 31.

Many of the requests for service were made face-to-face, in meetings between Diedhiou and Senegal's agents, which occurred at different times in Dakar, Senegal, Paris, France, and New York City. *Id.* ¶ 34. At various times throughout these years, Diedhiou was repeatedly assured by numerous Senegalese officials that he would be compensated for his services and reimbursed for his out-of-pocket expenses. *Id.* ¶¶ 36, 45. In connection with these services, Diedhiou incurred out-of-pocket expenses, totaling at least $128,650. *Id.* ¶¶ 37–39.

Sometime after December 2014, Senegalese officials requested a formal invoice from Diedhiou. *Id.* ¶ 46. In approximately May 2016, Diedhiou sent an invoice for approximately $2,438,650, for all professional services rendered and his out-of-pocket expenses, to Fodé Seck, Senegal's then-current Ambassador and Permanent Representative to the United Nations. *Id.* ¶¶ 47–48. In approximately August 2016, Seck wrote to Diedhiou and directed him to seek payment from Goudiaby. *Id.* ¶ 49. Diedhiou does not allege any further communication between the parties after August 2016.

### b. Procedural History

On July 23, 2020, Diedhiou filed the instant complaint, asserting claims for breach of contract and account stated against Senegal, claims of *quantum meruit*, unjust enrichment, and promissory estoppel against both defendants, and a claim for breach of written contract against Teranga. Doc. 1. On February 2, 2021, Senegal moved to dismiss Plaintiff's complaint as to all causes of action against Senegal. Doc. 24.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint…does not need detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashioned, the formal sufficiency of a plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if

it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements of documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. The Statute of Frauds Does Not Bar Diedhiou's Breach of Contract Claim

Senegal argues that Diedhiou's breach of contract claim must be dismissed pursuant to New York's statute of frauds because the services he allegedly rendered cannot be performed within one year, and he has failed to allege that the contracts are in writing. *See* N.Y. Gen. Oblig. Law § 5-701(a)(1). Senegal also argues that they are independently barred by N.Y. Gen. Oblig. Law § 5-701(a)(10), which requires contracts for "services rendered . . . in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein . . ." to be made in writing, and that the exception to this rule for duly licensed real estate brokers or salespeople does not apply. Doc. 24-1 at 5–6.

Turning first to § 5-701(a)(1), New York's statute of frauds requires that an agreement that "[b]y its terms is not to be performed within one year from the making thereof …" is void unless it has been memorialized in writing. N.Y. Gen. Oblig. Law § 5-701(a)(1). The New York Court of Appeals has explained that "the courts have generally been reluctant to give too broad an interpretation to this provision and instead have limited it to those contracts only which by their very terms have absolutely no possibility in fact and law of full performance within one year." *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 472 N.E.2d 992, 993 (N.Y. 1984) (citing 2 Corbin, Contracts [1950], § 444; 3 Williston, Contracts [3d ed], § 495). The question is "not what the probable, or expected, or actual performance of the contract was; but whether the

contract, according to the reasonable interpretation of its terms, required that it *should not* be performed within the year." *Id*. (emphasis added) (quoting *Warner v. Texas & Pacific Ry.*, 164 U.S. 418, 434 (1896)). It does not matter whether performance within a year is "unlikely or improbable." *Foster v. Kovner*, 840 N.Y.S.2d 328, 331 (App. Div. 1st Dep't. 2007); *see also Freedman v. Chem. Constr. Corp.*, 372 N.E.2d 12, 15 (N.Y. 1977) ("The critical test, instead, is whether 'by its terms' the agreement is not to be performed within a year.") (internal citations omitted); *accord South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98, 104 (2d Cir. 2009). If there is any possibility, no matter how improbable or impractical, that the contract could be performed within one year, the statute of frauds does not apply. *See D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 472 N.E.2d 992, 994 (N.Y. 1984); *Foster v. Kovner*, 840 N.Y.S.2d 328, 331 (App. Div. 1st Dep't 2007).

  Diedhiou appears to allege a series of discrete oral agreements, as opposed to a single overarching oral agreement setting forth all of the terms of the services he would provide. As alleged in the Complaint, the services requested of and provided by Diedhiou included the following: "Payment of taxes on the Property; [m]inimizing regulatory carrying costs for the Property; [m]anagement and payment of any violations incurred during development of the Property; [a]ssisting with construction permitting at various stages of developing the Property; [a]ssisting with managing and procuring necessary environmental studies for developing the Property; [a]ssisting with managing and procuring a geotechnical report for developing the Property; [d]esigning the interiors of the building and providing other architectural services to the Property; and [a]ssisting with transferring ownership of the Property to other entities affiliated with Senegal in later stages of development." Compl. ¶ 31.

As Diedhiou correctly points out, his Complaint nowhere alleges that the parties' agreements "contain[ed] terms precluding the performance of the agreed-upon services within one year." Doc. 25 at 8. He further asserts that either party had the option of fully performing or terminating the agreements within one year. *Id*. Diedhiou also argues that though his multiple services to Senegal lasted for more than one year, this does not bring the parties' agreements within the statute of frauds. *Id*.

Viewed in the light most favorable to Diedhiou, the Court finds that each of the services performed by Diedhiou could have been performed within a year, despite how unlikely that eventuality, as he alleges no contractual terms that would prevent performance within a year. Thus, Diedhiou's claims do not fall within the one-year provision of the statute of frauds. N.Y. Gen. Oblig. Law § 5-701(a)(1). While Senegal cites *Zupan v. Blumberg,* 141 N.E.2d 819, 820 (N.Y. 1957) to argue that "a service contract of indefinite duration cannot be executed in one year," *Zupan* does not control this case. *See* Doc. 26-1 at 7. *Zupan* involved an oral contract for the plaintiff to "procure business on a commission basis," in which the plaintiff would receive his commissions as long as the consumer accounts he procured were active. *Zupan*, 141 N.E.2d at 821. As such, the parties' obligations under the contract were contingent on the acts of the third-party customers. *Id*. Courts analyzing *Zupan* and its progeny have noted that, under such a contract, "the defendants' liability is contingent because it depends on the customers' placing orders, [and] the defendants' potential liability endures indefinitely, bringing the contracts within the statute of frauds." *Riley v. N.F.S. Servs.*, 891 F. Supp. 972, 975–76 (S.D.N.Y. 1995). In other words, because performance would be ongoing for as long as the defendant was making sales to third parties—for which it would owe commissions to the plaintiff—the contract was not "one which might be performed within a year, but rather one which could only be terminated

within that period by a breach of one or the other party to it." *Zupan*, 141 N.E.2d at 822 (noting that the possibility of such termination is not the same as the possibility of performance within the statutory period).

The present case is more analogous to *Nat Nal Serv. Stations, Inc. v. Wolf*, 107 N.E.2d 473, 474 (N.Y. 1952), in which the parties agreed that if the plaintiff were to purchase gasoline through defendant, the defendant would provide plaintiff with a discount. The court noted that neither party was obligated to do anything under this agreement unless and until the plaintiff offered to place an order for gasoline and the defendants accepted the offer and filled the order, at which point the defendant would have a legal obligation to provide the agreed-upon discount. *Id*. at 475. Just as in *Wolf*, Diedhiou and Senegal did not enter into an ongoing contract for a commission, nor was either party obligated to perform in an ongoing manner. Rather, they entered into a series of agreements for discrete services, any of which Diedhiou could decline to perform, and all of which could be performed within a year. Thus, their agreements do not fall within the one-year provision of the statute of frauds.

The Court turns next to the question of whether any of the alleged agreements fall within N.Y. Gen. Oblig. Law § 5-701(a)(10), which requires that agreements "to pay compensation for services rendered . . . in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein" must be in writing. N.Y. Gen. Oblig. Law. § 5-701(a)(10). However, the writing requirement "shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman." *Id*.

By Diedhiou's own account, he provided services related to finding and negotiating the purchase of real estate on behalf of Senegal. Compl. ¶¶ 21–28. He also alleges that one of the services he provided was "[a]ssisting with transferring ownership of the Property to other entities

8

affiliated with Senegal in later stages of development." ¶ 31.  He does not allege that he was an auctioneer, an attorney, or a duly licensed real estate broker or real estate salesman.

Any oral agreement to provide those more specific services would be barred by the statute of frauds unless put in writing.  *Minichiello v. Royal Bus. Funds Corp.*, 223 N.E.2d 793, 795 (N.Y. 1966) (under subsection 10, "negotiating" includes "procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction," and applies to a contract implied in fact or law).  Thus, any claim related to an agreement for Diedhiou to find and negotiate the purchase of real estate for Senegal, or to transfer ownership of such properties, is barred by the statute of frauds.

However, Diedhiou also alleges agreements to render services that do not fall within §5-701(a)(10), such as designing the interiors of the property, and assisting with construction permits for the property.  Compl. ¶ 31.  Those agreements do *not* fall within the purview of the statute of frauds because they are not encompassed by § 5-701(a)(10), nor are they services that are impossible to perform within one year.  Thus, viewing Diedhiou's complaint as alleging a series of agreements for various services, only those services rendered regarding the sale or transfer of ownership of the property would be barred by the statute of frauds.[3]

Diedhiou has also argued that the statute of frauds does not bar his breach of contract claim because the services he performed for Senegal are "unequivocally referable" to the alleged oral agreements.  Doc. 25 at 10.  Diedhiou is referring to the partial performance doctrine, in

---

[3] The Court would reach the same outcome even if it were to analyze Diedhiou's complaint as alleging the breach of a single agreement.  While the general rule is that if part of a contract is void under the statute of frauds, the entire contract is unenforceable, those parts of the contract that are not within the statute may be enforced "where a contract is severable, *i.e.,* susceptible of division and apportionment, having two or more parts not necessarily dependent upon each other."  *Nova Int'l, Inc. v. American Express Bank, Ltd.*, 94 Civ. 8536 (DC), 1996 WL 39317, at *6 (S.D.N.Y. Jan. 31, 1996) (citation and quotation marks omitted).  Thus, even assuming that the statute of frauds bars Diedhiou's claim for compensation for services rendered to assist with the sale or transfer of ownership of the property, it would not impact Diedhiou's contract claims for the remaining services, all of which are severable.

which an oral promise otherwise subject to the statute of frauds may be enforceable if one party has engaged in acts that are "unequivocally referable," or "explainable only with reference to" the alleged oral agreement. *See Anostario v. Vicinanzo*, 450 N.E.2d 215, 216 (N.Y. 1983).

First, it is unnecessary to reach Diedhiou's partial performance argument regarding any alleged agreements that fall outside of the statute of frauds, because the motion to dismiss is denied as to those agreements. Second, regarding services pertaining to assistance with the sale or transfer of ownership of the property, Diedhiou's reliance on the partial performance doctrine is misplaced. Lower courts in New York have reached differing conclusions regarding whether this exception applies to agreements that would be otherwise unenforceable under § 5-701, and the Court of Appeals has not directly ruled on the issue. *See Mtivity, Inc. v. Office Depot, Inc.*, No. 19 Civ. 5094 (FB)(RML), 2021 WL 969124, at *6 (E.D.N.Y. Mar. 16, 2021) (collecting cases). However, the Court agrees with Judge Block's analysis in *Mtivity*, finding that the Court of Appeals is unlikely to extend the partial performance exception to agreements that are barred by § 5-701. In *Mtivity*, Judge Block cited to *Messner Vetere Berger McNamee Schmetterer Euro RSCG, Inc. v. Aegis Group, PLC*, 711 N.E.2d 953, 956 n.1 (N.Y. 1999), in which the Court of Appeals stated in dicta that it "ha[d] not in fact adopted [the] proposition" that the part performance exception applied to contracts subject to § 5-701. The Court of Appeals in *Aegis Group* noted that the case before it, as well as its decision in *Anostario v. Vicinanzo*, cited above, rested only on the partial performance exception applicable to contracts governed by § 5-703, a different section of New York's statute of frauds regulating contracts for the conveyance of real property. 711 N.E.2d at 956 n.1. The Court therefore finds, consistent with the Court of Appeals' observation in *Aegis Group* and with the holdings of several New York appellate courts, that the part performance exception is not available to save Diedhiou's breach of contract

claims pertaining to purchase and transfer of the property, which are barred by § 5-701. *See also Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722, 722 (App. Div. 1st Dep't 2007) (the partial performance exception has not been extended to § 5-701); *Valentino v. Davis*, 270 A.D.2d 635, 637 (App. Div. 3d Dep't 2000) (same)).

Senegal's motion to dismiss based on the statute of frauds is therefore granted in part and denied in part. The motion to dismiss is granted with respect to Diedhiou's claims pertaining to services rendered for assistance with the purchase and transfer of the property, and denied with respect to all other alleged services rendered.

### B. Claim for Promissory Estoppel

Under New York law, promissory estoppel requires three elements: (1) "a clear and unambiguous promise;" (2) "a reasonable and foreseeable reliance by the party to whom the promise is made;" (3) and "an injury sustained by the party asserting the estoppel by reason of his reliance." *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (citation omitted).

"Promissory estoppel has . . . become increasingly available to provide relief to a party where the contract is rendered unenforceable by operation of the Statute of Frauds." *Merex A.G. v. Fairchild Weston Sys.*, 29 F.3d 821, 824 (2d Cir. 1994) (citing Restatement (Second) of Contracts § 139(1) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the statute of frauds if injustice can be avoided only by enforcement of the promise.")).

Diedhiou alleges that, during the period from 2008 to 2014, he was "repeatedly assured by numerous Senegalese officials that he would be well-compensated for his dedication and

11

services to the Property and to Senegal, and also reimbursed for his out-of-pocke[t] expenses." Compl. ¶ 36.  Diedhiou incurred significant out-of-pocket expenses, totaling at least $128,650, in reliance on Senegal's promises of payment.  *Id.* ¶¶ 37-39.  Diedhiou also performed professional services, for the benefit of Senegal, for which he has not been compensated.  *Id.* ¶¶ 31, 36.  Senegal argues that, because Diedhiou alleges that Senegal's nonpayment constituted a breach of contract, he cannot state a claim for promissory estoppel.  Doc. 24-1 at 7.

Senegal's argument is unavailing.  It is true that, when the parties do not dispute the existence of a binding contract, a claim for promissory estoppel will be dismissed as duplicative.  *See, e.g., Gas Nat., Inc. v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 386 (S.D.N.Y. 2014).  However, it is well-established that "where a defendant disputes the existence of a valid, enforceable contract, a plaintiff may plead promissory estoppel as an alternative theory of recovery." *Pers. Watercraft Prod. SARL v. Robinson*, No. 16 Civ. 9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017); *see also Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 421 (N.D.N.Y. 2020).  The Court thus denies Defendant's motion to dismiss as to the claim for promissory estoppel.

### C. Claim for *Quantum Meruit*

"In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 1995) (citation omitted).

Senegal argues that Diedhiou's claim for *quantum meruit* should be dismissed because the statute of frauds applies to actions for compensation in *quantum meruit*.  Doc. 24-1 at 6-7.

Senegal also argues that the claim is duplicative of Diedhiou's breach of contract claim. *Id.* Diedhiou argues that New York law permits quasi-contract claims of unjust enrichment and *quantum meruit* where there is a dispute as to the existence of a contract or where there is no contract. Doc. 25 at 11.

First, Diedhiou's *quantum meruit* claim is adequately pleaded. It is true, as Senegal has argued, that "a plaintiff may not escape the Statute of Frauds by simply affixing the label 'quantum meruit' to the very contract claim that is barred." *Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 433 (2d Cir. 1995) (citing *Farash v. Sykes Datatronics, Inc.*, 452 N.E.2d 1245, 1246 (N.Y. 1983)). However, "[a] cause of action does exist . . . where the plaintiff 'merely seeks to recover for the value of the work performed, as distinct from the contract price.'" *Id.* (citation omitted). Here, Diedhiou's Complaint alleges in the alternative that Senegal is "liable to Plaintiff for the reasonable value of the services [rendered]." Compl. at ¶ 67. Thus, the statute of frauds presents no obstacle regarding Diedhiou's *quantum meruit* claim for the reasonable value of services rendered.

Second, the New York Court of Appeals has addressed Senegal's argument that, because he also alleges a breach of oral contract claim, he may only allege one theory of recovery. In *Farash*, 452 N.E.2d at 1247, the Court of Appeals acknowledged that "[o]bviously, the party who seeks both to enforce the contract that is unenforceable by virtue of the statute of frauds and to recover under a contract implied in law will present contradictory characterizations."). The court recognized, however, that pleading alternative theories of relief is accepted practice in New York, and thus these contradictory characterizations are still proper pleadings. *Id.*; *see also Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 237 (S.D.N.Y. 1992) ("[W]hen the existence of the contract is in dispute, a plaintiff may plead breach of contract and quantum

meruit in the alternative."). Similarly here, while the Court acknowledges that Diedhiou will not ultimately be able to recover on all of his theories, it concludes that the *quantum meruit* claim should not be dismissed at this stage. Diedhiou may still recover in equity even if the Court ultimately finds that there was no enforceable oral contract.

Therefore, Senegal's motion to dismiss is denied as to the claim for *quantum meruit*.

### D. Claim for Unjust Enrichment

The Court's analysis regarding Diedhiou's unjust enrichment claim is substantially the same as its analysis regarding his *quantum meruit* claim.

Under New York law, for a plaintiff to prevail on a claim of unjust enrichment, the Plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001) (citing *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 79 (2d Cir. 1986)).

Under New York law, an unjust enrichment claim is precluded if a valid contract covers the subject matter of the dispute. *First Hill Partners, LLC v. Bluecrest Cap. Mgmt.*, 52 F. Supp. 3d 625, 634 (S.D.N.Y. 2014). However, when "plaintiff's unjust enrichment claim is derived from the same set of facts as plaintiffs' breach of contract claim, plaintiffs may plead alternative theories of liability," so long as the existence or enforceability of the underlying contract is in dispute. *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 580 (E.D.N.Y. 2014); *see also ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 436 (S.D.N.Y. 1998) (denying motion to dismiss an unjust enrichment claim where the defendant contested the validity and enforceability of the contract).

In the present case, the unjust enrichment claim may proceed in the event that no enforceable contract is found, as Diedhiou alleges that he provided the benefit of services for which he was not paid, and that it would be inequitable for Senegal to receive this benefit without providing compensation. *See, e.g.*, *Helmsley-Spear, Inc. v. Westdeutsche Landesbank Girozentrale*, 692 F. Supp. 194, 205 (S.D.N.Y. 1988) (noting that, even when there was no written contract, the defendant had obtained the benefit of the plaintiff's services and was bound to compensate him in good conscience). Thus, Defendant's motion to dismiss is denied as to the claim for unjust enrichment.

### F. Claim for Account Stated

To prevail on a claim for account stated, Diedhiou bears the burden of establishing that "(1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated." *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 570 (S.D.N.Y. 2013) (*citing IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)) (additional citation omitted). The second and third elements may be implied if "a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (citing *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999)). "An objection to an account stated that is first made only after litigation on the account stated has been commenced is, as a matter of law, not made within a reasonable time." *White Diamond Co. v. Castco, Inc.*, 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006).

Diedhiou argues that (1) he presented Senegal with an invoice, (2) that Senegal never objected to the amount requested or quality of work reflected in the invoice, and that (3)

Senegal's objection to Plaintiff's account stated claim was first made in Senegal's request for a pre-motion conference and was therefore not asserted within a reasonable time. Doc. 25 at 13 (citing *White Diamond Co.*, 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006)). Specifically, Diedhiou has alleged that he sent an invoice to [Seck]" in May 2016, who "wrote to Diedhiou and directed him to seek payment directly from Goudiaby." Compl. ¶ 49. He then alleges that Seck, who had "full knowledge of the contents and amount of the invoice," did not complain about the quality of any of the services rendered. *Id.* at ¶ 50. Diedhiou relies on *Regent Partners v. Parr Dev. Co.*, in which the court concluded that a promise to pay can be implied where a defendant fails to affirmatively object to requests for payment. *See* 960 F. Supp. 607, 616 (E.D.N.Y. 1997).

Senegal argues that the Complaint alleges that Diedhiou submitted an invoice in May 2016, and that Senegal refused to pay in August 2016, referring to Diedhiou's allegation that Seck directed him to instead seek payment from Goudiaby, Diedhiou's uncle. Doc. 24-1 at 8. Thus, Senegal argues that it affirmatively rejected Diedhiou's statement of account. *Id.*

It is true that a claim for account stated would ordinarily be dismissed when a defendant disputes responsibility for the payment. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, No. 95 Civ. 2144 (JGK), 1999 WL 58680, at *7 (S.D.N.Y. Feb. 4, 1999) (finding that defendants arguably disputed their responsibility for paying the subject fees and expenses by letter, and noting that "such disputes about the statements of account precludes a finding of account stated as a matter of law"); *see also Waldman v. Englishtown Sportswear*, 460 N.Y.S.2d 552, 556 (App. Div. 1st Dept. 1983) (a claim for account stated cannot stand when "any dispute about the account was shown to have existed") (citing 1 NY Jur 2d, Accounts and Accounting, § 16).

16

Here, however, Diedhiou has alleged that Goudiaby is an agent of Senegal. Compl. ¶ 30. Because Senegal has presented no argument disputing that allegation at this time, the Court declines to dismiss the claim for account stated, as re-directing Diedhiou to an individual who is *also* an agent of Senegal would not constitute a dispute about Senegal's responsibility for paying the account. However, in the event the Goudiaby is found *not* to be an agent of Senegal, the claim for account stated would fail, because then Senegal would have disclaimed its legal responsibility for the invoice amount approximately three months after its receipt, and Diedhiou cites to no case holding that its doing so within that period of time is untimely as a matter of law.

### IV. CONCLUSION

For the reasons set forth above, Senegal's motion to dismiss is GRANTED in part and DENIED in part. Senegal's motion is granted as to Diedhiou's breach of contract claims relating to the purchase and transfer of the property; but denied as to all other claims. The parties are directed to appear for a teleconference on November 5, 2021 at 9am. The parties are directed to dial 877-411-9748 and enter access code 3029857# when prompted. The Clerk of Court is respectfully directed to terminate the motion, Doc. 24.

It is SO ORDERED.

Dated: September 29, 2021
       New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.